IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SAMANTHA ZAMORA, | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO.: 3:16-cv-05028-RK |
| STELLAR MANAGEMENT GROUP, INC. D/B/A QUALITY SERVICE INTEGRITY, | ) |
| and | ) |
| STELLAR MANAGEMENT GROUP III, INC., **SERVE AT:** National Registered Agents, Inc. 120 S. Central Avenue Clayton, MO 63105 | ) |
| Defendants. | ) |

## AMENDED COMPLAINT

COMES NOW Plaintiff Samantha Zamora, and for her Amended Complaint against Stellar Management Group, Inc., and Stellar Management Group III, Inc., collectively as Defendants, states as follows:

### PARTIES, JURISDICTION, & VENUE

1. Plaintiff Samantha Zamora resides in Southwest City, Missouri in McDonald County, Missouri.

2. Defendant Stellar Management Group, Inc. is a corporation, having its legal residence in Tennessee and its principal place of business in Chattanooga, Tennessee and it is not a resident of the State of Missouri. Said Defendant is doing business in the State of Missouri at a Tyson Foods facility in Noel, Missouri, but that at all relevant times mentioned herein, said Defendant was not licensed to do business in the State of Missouri.

3. Defendant Stellar Management Group III, Inc. is a Nevada corporation with its principal place of business in Chattanooga, Tennessee and it is not a resident of the State of Missouri. Said Defendant is doing business in the State of Missouri at a Tyson Foods facility in Noel, Missouri, but that at all relevant times mentioned herein, said Defendant was not licensed to do business in the State of Missouri.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. Section 1332 because the parties are citizens of different states or of foreign states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendants under the Missouri Long Arm Statute, Mo. Rev. Stat. Section 506.500 because Defendants have transacted business, made and performed contracts, and committed tortious acts in this state.

6. Venue is proper in this District under 28 U.S.C Section 1391(a) because Defendants have breached duties to Plaintiff in this District, committed tortious acts in this District, and has made and performed contracts substantially connected to this District.

## FACTS COMMON TO ALL COUNTS

7. Defendants have a contract with Tyson Foods to provide sanitation services for the Tyson facility in Noel, Missouri and have a substantial workforce of more than 100 employees working at the Tyson facility in Noel, Missouri.

8. In January 2016, Plaintiff responded to an advertisement for employment in the paper and was hired by Defendants to work in the Human Resource (HR) Department in Noel, Missouri.

9. Plaintiff's duties included hiring, firing and disciplining Defendants' employees who worked at the Tyson Foods facility in Noel, Missouri. She was the only Human Resources employee at the Noel facility.

10. Plaintiff's direct supervisor was Erica Ortiz. Erica had previously held the HR job in Noel, and Plaintiff was hired as her replacement, and Erica was promoted to have HR responsibilities that included the Noel facility and other facilities.

11. On approximately February 5, 2016, Plaintiff was told by Kyle Hunt that she should fire William DeLeon immediately. Kyle Hunt was the regional manager of Defendants.

12. The Plaintiff reviewed the employment records necessary to terminate Mr. DeLeon and discovered that there were two personnel files, with identical Social Security numbers and other identifying information, but the employee pictures in the two files were different. Specifically, the New Hire Information forms in two files were identical except for the photographs. The photograph in one of the files matched the individual who Plaintiff was told to terminate. Upon examination, it was clear that the photograph for this employee was irregular. For example, the photograph purported to be from a photo identification document from the state of Tennessee, such as a driver's license, however, the photograph was imprinted with the seal of the State of Missouri.

13. The search also indicated that the Social Security number and other identifying information belonged to Edwardo Ortiz, a former employee of Defendants. It was apparent that Edwardo Ortiz's Social Security number and other personal information had been used in an application for William DeLeon, the employee who was to be terminated.

14. Plaintiff was told when she began work that the wages paid by Defendants to sanitation workers were low and there was high turnover and was suggested that it might be necessary to hire undocumented workers.

15. The irregular paperwork, related to the employee who was to be terminated, suggested to Plaintiff that the employee who was to be terminated was employed using fraudulent records and was likely an illegal and undocumented worker.

16. Hiring undocumented immigrant workers is a violation of Federal law under the Immigration Reform and Control Act of 1986.

17. Plaintiff shared an office with Kyle Hunt, area manager for Defendants. Plaintiff reported the irregularity to Kyle Hunt and discussed the likelihood that the employee was an illegal and undocumented employee. Kyle Hunt told Plaintiff that she should report this information to Erica Ortiz, her supervisor.

18. Approximately two days later, Melissa Sierra, who was Erica's supervisor, came to the Noel facility and confronted Plaintiff and told Plaintiff she should not have told Kyle Hunt. Melissa told Plaintiff that because of what Plaintiff had done there would have to be an investigation of the matter when it could have been handled discreetly. Plaintiff was told that Erica would be talking with her about this.

19. Shortly after the conversation, Erica came to the facility in Noel, Missouri and told Plaintiff that she should not have reported any violation to Kyle Hunt and told Plaintiff to make a sexual harassment claim against Kyle Hunt. Erica prepared a sexual harassment claim for Plaintiff to sign. Plaintiff told Erica that she had not been sexually harassed and that she would not sign the complaint. The same day that Erica asked Plaintiff to sign the bogus sexual harassment claim, Erica told Plaintiff that Erica had been told that the plant manager had

4

Case 3:16-cv-05028-RK   Document 38   Filed 09/14/16   Page 4 of 9

instructed Plaintiff not to hire white people and that this had to be investigated. Plaintiff stated that she had not been told this and Erica filled out a written statement for Plaintiff to sign indicating it was not true. An investigation of this allegation continued and a meeting was held among the employees who supposedly knew that the plant manager instructed Plaintiff not to hire white people and it was determined that the allegation was false.

20. Shortly after Plaintiff's refusal to file the bogus sexual harassment complaint and after the encounter regarding the allegation that Plaintiff had been told not to hire white people, Erica falsely claimed that Plaintiff had given notice of resignation and that Plaintiff's two-week resignation had been accepted.

21. Plaintiff emphatically stated that she had not offered her resignation that she would not resign.

22. The next day that Plaintiff appeared for work she was stopped at guard shack and told that her employment was terminated.

23. The termination of Plaintiff was unlawful for the reasons described below and was for the purpose of protecting an unlawful and profitable scheme of hiring undocumented and illegal workers at low wages in order to inflate profits and gain an unlawful advantage over other companies who obeyed the law.

24. As a direct result of the unlawful termination, Plaintiff has suffered substantial damages including but not limited to the following:

    a. Before accepting Defendants' offer of employment, Plaintiff was employed at a stable and profitable employment. Plaintiff quit that employment, at which she was making a higher wage, to accept the employment offer of Defendants because she believed the employment had greater potential for advancement and because

it was closer to her residence. Because of Defendants' wrongful misconduct, Plaintiff has lost her old employment and has been fired from the employment of Defendants and is without income and has in the past and will in the future suffer a financial loss.

    b.    Plaintiff knew she was doing the right thing by refusing to violate the law, but she was treated rudely, intimidated and subjected to emotional and psychological stress and to public humiliation and ridicule.

    c.    Plaintiff's public humiliation and ridicule has damaged her reputation and employment prospects and she will suffer a setback to her career and economic loss.

25.    The wrongful acts of Defendants were done with willful and wanton disregard for the rights of Plaintiff and for the specific purpose of harming and intimidating Plaintiff and other employees of Defendants, letting them know that any action by other employees that would threaten or expose the unlawful practices of Defendants would be dealt with harshly. The wrongful acts were done to protect the profitable and illegal scheme and for the purpose of intimidating and harming Plaintiff and punitive damages should be assessed against Defendants to punish and deter Defendants and others from similar egregious misconduct.

## COUNT I

COMES NOW the Plaintiff and for COUNT I of her complaint against Defendants states the following additional facts:

26.    That Plaintiff, as described above, reported wrongdoing and a violation of the law to Defendants by notifying her superior of the wrongdoing and violation of law

27.    That Missouri public policy as set out in the case of <u>Fleshner v. Pepose Vision Institute, P.C.</u>, 304 S.W.3d 81 (Mo Banc 2010) protects employees, including at will employees, from retaliation and discharge for reporting wrongdoing or violations of the law.

28. That Defendants' wrongful act was in retaliation and for the purpose of punishing Plaintiff for reporting unlawful activity by Defendants and for the purpose of making an example of Plaintiff to send a message of fear and intimidation to other employees of Defendants and that Plaintiff's reporting of unlawful activity was the contributing cause to Plaintiff's unlawful termination.

29. That the actions of Defendants, through their employees, were a clear violation of Missouri law and the violation of the public policy in the state of Missouri that encourages and protects employees who report wrongdoing or violations of law.

## COUNT II

COMES NOW the Plaintiff and for COUNT II of her complaint against Defendants states following additional facts:

30. The Defendants by and through their employees requested that Plaintiff make a false and unlawful claim of sexual harassment against Kyle Hunt.

31. Making a false claim of sexual harassment would be a violation of law and a violation of well established and clear mandate of public policy as expressed in the Constitution, statutes, and regulations of the State of Missouri.

32. Plaintiff refused to make the false and unlawful claim.

33. Missouri public policy as set out in the <u>Fleshner</u> case above protects employees, including at will employees, from retaliation and discharge for refusing to violate the law or for refusing to violate well-established and clear mandate of public policy.

34. That Defendants' wrongful act of discharging Plaintiff was in retaliation for the purpose of punishing Plaintiff for refusing to violate the law and public policy of the state of Missouri by filing a false and unlawful sexual harassment claim and for the purpose of making

an example of Plaintiff to send a message of fear and intimidation to other employees of Defendants and that Plaintiff's refusal to make the false sexual harassment claim was the contributing cause to Plaintiff's unlawful termination.

35. That the actions of Defendants, through their employees, were a clear violation of all of Missouri law and a violation of the public policy of the state of Missouri that protects employees who refuse to violate the law.

**WHEREFORE**, Plaintiff prays for judgment against Defendants in an amount that is fair and reasonable to compensate her for her damages and for an additional sum for punitive damage to punish and deter Defendants and others from similar unlawful acts in future, and for such further and different relief as the court deems proper.

Respectfully submitted,

/s/ Andrew S. Buchanan
Andrew S. Buchanan, #53824
Charles Buchanan, #23185
BUCHANAN & WILLIAMS, P.C.
1105 E. 32nd St., Suite 5
Joplin, MO 64802-1582
Telephone: 417-623-8220
FAX: 417-781-9706
Email: abuchanan@bwsattorneys.com
Email: cbuchanan@joplinlawyers.com

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Western District of Missouri by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record on this 14th day of September, 2016 to:

Lance Roskens
Ridgeview Business Center
3315 East Ridgeview St., Ste. 100
Springfield MO 65804
lroskens@taylorstafford.com

                                        By: Andrew S. Buchanan
                                              Andrew S. Buchanan