IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

SAMANTHA ZAMORA,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      Case No. 3:16-CV-05028-RK
                                    )
STELLAR MANAGEMENT GROUP, INC.      )
D/B/A QUALITY SERVICE INTEGRITY,    )
et al.                              )
                                    )
            Defendant.              )

## DEFENDANTS' BRIEF IN SUPPORT OF DEFENDANT'S SUBPOENAS REGARDING CELL PHONES

1

## Table of Contents

Background...........................................................................................................4

    A. Requests To Plaintiff And De Leon's First Deposition.......................................7

Standard for Discovery.......................................................................................14

Analysis...............................................................................................................15

Conclusion..........................................................................................................22

2

## Table of Authorities

*Cases*

*Bahkit v. Safety Marketing, Inc., 2014 W.L. 2916490 (D. CT. 2014)*............................17

*E.E.O.C. v. Danka Industries, Inc., 990 F.Supp. 1141 (E.D. Mo. 1997)*.................14, 15

*E Trade Securities, LLC v. Deutsche Bank AG, 230 F.R.D. 582 (D.C. MN 2005)*.........17

*Freres v. Zyngular Corporation, 2014 W.L. 1320273 (D. UT 2014)*..............................15

*Haar v. Callahan, 2009 W.L. 1408671 (D.S.D. 2009)*...................................................15

*Huang v. Gateway Hotel Holdings, 2008 W.L. 2486030 (E.D. Mo. 2008)*.....................16

*Liberty Mutual Fire Insurance Company v. Centimark Corp., 2009 W.L. 1702291 (E.D.*
*Mo. 2009)* .......................................................................................................................15

*Stevenson v. Union Pacific Railroad Co., 354 F.3d 739, 746 (8th Circuit 2004)*.............17

Federal Rules of Civil Procedure

Rule 26..............................................................................................................................14

Rule 45.............................................................................................................................5, 14

Case 3:16-cv-05028-RK   Document 96   Filed 12/15/16   Page 3 of 23

COME NOW Defendants Stellar Management Group, Inc., and Stellar Management Group III, Inc., by and through counsel, and pursuant to orders issued by the Court on November 9th and November 22nd, provides briefing in support of defendant's subpoenas to David De Leon requiring the production of certain documents, messages, correspondence and cell phone.

In response to the second subpoena served upon him by Defendants, David De Leon (former employee of defendant Stellar Management Group III, Inc.) appeared for his deposition on November 22, 2016. However, he did not produce the text messages or emails that had been requested in the two separate subpoenas served upon hiim. He did eventually obtain his cell phone containing some of these messages, but, when asked to read those messages into the record, eventually indicated he would not do so because he didn't want to. Counsel was prohibited from reviewing those messages (or other messages with employees or former employees of defendant) by this Court's order.

## BACKGROUND

On October 5, 2016, David De Leon was served with a subpoena issued by counsel for defendants which required David De Leon to produce on October 17th and at the defendants' counsel's law offices the following:

All text messages, Facebook messages, emails, letters, or other correspondence as well as any cell phone containing such correspondence, to, from, or with Samantha Zamora, her husband, Richard Garza, or the law firm of Buchanan and Williams (Samantha's

4

attorneys).

(Exhibit 1, September 28th subpoena and return, attached hereto as Exhibit 1).

David De Leon admits that he was served with the subpoena. (11/22/16 deposition of De Leon, P.5, L.10-21, attached as Exhibit 2). On September 26, 2016, nine days before David De Leon was served and 21 days before the date of production, counsel for defendants filed defendants' notice of issuance of the subpoena to David De Leon and attached the proposed subpoena to that filing, thereby giving notice to counsel for plaintiff of the proposed subpoena. (Document number 46). At no time prior to October 17th, the date of production, did plaintiff object to the subpoena. Nor did David De Leon object to the subpoena.

David De Leon did not produce any of the information requested in the subpoena or the cell phone requested in the subpoena by or on October 17, 2016. As a result of David De Leon's failure to comply with the subpoena, defendants filed a motion for order of contempt requesting the Court to either hold David De Leon in contempt or entering an order requiring David De Leon to show cause as to why he should not be held in contempt for failing to comply with the subpoena. (Document number 53).

On November 4, 2016, plaintiff filed plaintiff's opposition to defendants' motion for contempt. (Document number 64). In that motion, plaintiff first argued that the motion for contempt should be denied because the subpoena to David De Leon allegedly did not comply with Rule 45(c)(2) as, according to plaintiff, the place of compliance was more than 100 miles from where David De Leon resided, was employed, or regularly transacted business. Defendants filed reply suggestions in support of the motion on November 7th. (Document number 66). In those suggestions,

5

defendants pointed out that, contrary to plaintiff's assertion, Courts apply the straight line on the map approach or as the crow flies approach in determining the 100 mile rule. Defendants established that David De Leon's residence was well within the 100 miles allowed under Rule 45. The only other basis raised by plaintiff in plaintiff's opposition to the motion for contempt was an allegation that David De Leon had complied with the subpoena by alleging sending an email to defendants' counsel. Defendants' counsel presented an affidavit from defendants' counsel setting forth that no such email was ever received. Furthermore, the alleged email did not actually comply with the subpoena as, in that email, David De Leon stated the following:

> I went to my carrier Verizon, and they said every you request email, text, incoming, outgoing calls should be available upon request from your party. I attempt from Verizon requesting and could not obtain that information, they said your party has the privilege getting all information. I received and sent papers back signed as requested.
>
> Thanks,
>
> David De Leon

(Document 64-3).

The subpoena required David De Leon to produce any emails, messages, correspondence and the cell phone containing that correspondence that he had in his possession. The email allegedly sent by David De Leon did not in any way respond to this request. It was later learned at the second deposition of David De Leon that he in fact did have on his phone a multitude of text messages with the plaintiff (he estimated at least 75) as well as emails with the plaintiff and the plaintiff's husband. (Exhibit 2,

P.52, L.14-25, 53, L.1-20). Despite the fact that these are the very messages that were requested in the original subpoena to David De Leon, none were produced. (Exhibit 2, P.9, L.15-25, P.10, L.1-15, 20-5, P.11, L.1-16, 19-25, P.14, L.11-25, P.15, L.1-22).

On November 9, 2016, a telephone conference hearing was held with this Court. As of the date of that conference, David De Leon had not in any way objected to the subpoena served upon him. Plaintiff had never made any objections to the subpoena but had argued against the motion for contempt on the incorrect grounds that first, the place of production was outside of the 100 mile rule and second that David De Leon had complied with the subpoena even though he had not. Despite the fact that no one, including David De Leon, had objected to the subpoena, the Court, sua sponte and on its own accord, stated that the subpoena's request to provide the actual cell phone may be over broad and an invasion of David De Leon's privacy. (Exhibit 3, 11/9/16 transcript, P.7, L.1-20; P.8, L.19-25; P.9, L.1-6). The Court denied defendants' motion for contempt and ordered defendants to again subpoena David De Leon to produce the requested messages and documents (but not the cell phone) and to testify under oath as to any reasons why he has not complied with the original subpoena. The Court ordered that defendant issue said subpoena and have David De Leon appear on November 15th (the date chosen by plaintiff's counsel to reproduce separate witness Jose Lopez). (Exhibit 3, P.15, L.18-25, P.16, L.1-25, P. 17, L. 1-6).

Acting in compliance with the Court's November 9, 2016 order, on November 10th, counsel for defendants filed its notice of issuance of subpoena to be directed to David De Leon to appear on November 15, 2016 and produce certain items. (Document number 72). David De Leon was served with the subpoena on November 11th. (See

7

Exhibit 4, November 10, 2016 subpoena and return).

### A. Requests To Plaintiff And De Leon's First Deposition

Although defendants first requested, on May 31, copies of plaintiff's messages with employees or former employees, no messages were ever produced other than a few messages between plaintiff and David De Leon. David De Leon's first deposition was taken September 23, 2016. During that deposition, David De Leon testified that the plaintiff or her husband had sent him text messages and he had communicated with her by text message. (Exhibit 5, September 23, 2016 deposition of David De Leon, P.86, L.18-23).

At that deposition, David De Leon testified that he had two phones, one with a phone number of (479) 295-0688 and the second was a phone number of (501) 366-6897. (Exhibit 5, September 23, 2016 deposition of David De Leon, P. 87, L.6-21).

David De Leon had with him the (479) 295-0688 phone but, after looking at the phone, testified that any text messages with the plaintiff were on the second cell phone with the phone number starting with 501. (Exhibit 5, 1st deposition of David De Leon, P.87, L.4-21). He testified that he had only given Samantha the 501 phone number. (Exhibit 5, 1st deposition of David De Leon, P.88, L.12-17). De Leon admitted in his second deposition that he had not been truthful about these issues in his first deposition. (Exhibit 2, P.27, L.4-24). The text messages with the plaintiff were on the 479 phone that he had with him during the first deposition. *Id.*

On November 14, 2015, the day before David De Leon was set to appear to produce messages and explain why he had not complied with the subpoena, plaintiff's

8

counsel emailed defendants' counsel providing documents that plaintiff stated were responsive to defendants' discovery request. (Exhibit 6, November 14, 2016 email from Andrew Buchanan). In that email, plaintiff's attorney stated that document numbers 11-14, which were being produced, constituted text messages between plaintiff and David De Leon.

Due to the production of these text messages after David De Leon's original deposition, defendants sought clarification from the Court regarding whether defendants would have the ability to take David De Leon's deposition and ask him questions regarding the text messages produced by plaintiff's counsel on November 14th. The Court granted this request, allowing defendants' counsel to take the deposition of David De Leon regarding the text messages. (Document 77).

David De Leon appeared on November 15th but, as Jose Lopez's deposition was also scheduled for the same date, David De Leon's deposition was not taken. Prior to the completion of Jose Lopez's deposition, David De Leon requested to be able to leave to pick up his children and stated that he would agree to be bound by the subpoena and reappear on November 22nd. Counsel for defendants and counsel for plaintiff agreed to this proposal and David De Leon's deposition was rescheduled for November 22nd.

On November 22nd, minutes before the deposition of David De Leon was scheduled to occur, plaintiff's counsel handed to defendants' counsel text messages between plaintiff's counsel and David De Leon dating from August 24th through October 12th. (Exhibit 7, August 24th text messages).

Despite the previous request for production, these text messages had not been

9

produced prior to De Leon's deposition in September. The messages establish that David De Leon was providing plaintiff's counsel with the number for Erika Ortiz, an individual plaintiff alleges is a key witness to plaintiff's allegations. (Document 38, number 10, 17, 18, 19, and 20).

De Leon appeared for his deposition on November 22, 2016. He produced documents that he had obtained from his cell phone carrier, Verizon. (Exhibit 8, previously marked as Exhibit 17). He did not produce any other documents, including copies of any messages with plaintiff or her husband. At one point, he admitted that he knew how to email or forward text messages off of his phone but could offer no explanation for why he had failed to do so after receiving two separate subpoenas requiring him to produce such documents. (Exhibit 2, P.14, L.11-25, P.15, L.1-15). He later stated he didn't know how to obtain the text messages and emails off of his phone.

De Leon admitted that the documents with Verizon were not any actual text messages, Facebook messages, or other correspondence between himself and plaintiff. (Exhibit 2, P.15, L.11-17). Although David De Leon did not have his phone on his person, it was discovered during the course of his deposition that he had it with him in his vehicle that he had driven to the deposition. (Exhibit 2, P.29, L.13-22). Counsel for defendants asked if David De Leon would be willing to retrieve his phone from his vehicle and De Leon said he would be willing to do so. (Exhibit 2, P.29, L.17-22). At that point, plaintiff's counsel objected. (Exhibit 2, P.29, L.25, P.30, L.1-23). As a result of plaintiff's counsel's objection, defendants' counsel requested a hearing with the Court to determine whether De Leon would be able to produce his cell phone at the deposition for review. Prior to the phone conference with the Court, De Leon testified that he would

10

be willing to produce his cell phone for review. (Exhibit 2, P.20, L.10-24). He also testified that he was fine with producing his cell phone so that the entire contents of the phone could be copied. (Exhibit 2, P.21, L.2-10). He testified he had no objection to producing his cell phone in such a manner.

During the phone conference, the Court was informed that David De Leon had no objection to producing his cell phone for inspection and even to producing his cell phone for a full copying of all the contents of the cell phone. (11/22/16 transcript, P.3, L.2-3; P.4, L.1-8, attached as Exhibit 9). Plaintiff's counsel attempted to object and requested a protective order on the basis that a complete copying of the cell phone might be an invasion of David De Leon's privacy and lead to David De Leon some how being harassed or embarrassed. (Exhibit 9, P.4, L.9-23). Despite the fact that David De Leon had no objection to producing his cell phone for complete copying, this Court ordered that counsel were prohibited from copying the cell phone until defendants briefed this issue to the Court. (Exhibit 9, P.7, L.20-24). Further, although De Leon indicated he was perfectly willing to produce his cell phone that day for review of counsel, this Court ordered that counsel was prohibited from viewing or looking at David De Leon's cell phone during his deposition. (Exhibit 9, P.8, L.14-25, P.9, L.1-25). The Court stated that De Leon would be allowed to obtain his cell phone and view it during deposition, and testify as to the contents of it, but counsel could not view the actual cell phone. *Id.* Counsel for defendant specifically asked whether there would be any occasion when counsel would be allowed to view the cell phone and the Court ordered that counsel could not view the cell phone. *Id.*

After the November 22nd phone conference with the Court, De Leon obtained his

11

cell phone from his vehicle. Defendants' counsel asked him to examine the cell phone and he testified that there were text messages between himself and Samantha Zamora on the cell phone. (Exhibit 2, P.39, L.4-11). Further, David De Leon testified that the cell phone containing those messages was the same cell phone containing the 479 phone number that he had with him during his first deposition in September and which David De Leon had then, falsely, claimed did not contain any text messages with the plaintiff. (Exhibit 2, P.27, L.4-24). De Leon admitted that he had testified falsely in his first deposition when he stated that any messages or phone calls with the plaintiff were conducted through his separate phone with the 501 number. (Exhibit 2, P.29, L.1-9). He further testified that the phone he had with him at the November 22nd deposition contained at least 75 text messages between himself and the plaintiff. (Exhibit 2, P.52, L.14-25). Testimony was elicited that the first text messages were from late June of 2016 and were directly related to the allegations and lawsuit filed by the plaintiff against defendants. (Exhibit 2, P.39, L.21-25, P.40, L.1-20). Thus, these text messages demonstrated that David De Leon had been untruthful in his first deposition when he testified that his contact with the plaintiff regarding the lawsuit, including text messages, all occurred after his employment with QSI (defendant) was terminated in August of 2016 (Exhibit 5, 1st deposition of De Leon, P.6, L.12-17; P.90, L.5-19; P.73, L.8-25, P.74, L.1-25, P.75, L.1-25, P.76, L.1-25, P.77, L.1-18; P.78, L.15-22, P.79, L.25, P.80, L.1-24, Exhibit 2, P.41, L.15-25, P.42, L.1-2).

Being unable to view the phone and read the text messages between plaintiff and David De Leon, counsel for defendants requested that David De Leon read into the record the text messages between plaintiff and David De Leon. (Exhibit 2, P.54, L.16-

12

25, P.55, L.1-25, P.56, L.1-15). David De Leon did read into the record the first few text messages between himself and the plaintiff. (Exhibit 2, P.40). However, he then stated that he did not wish to continue doing so. (Exhibit 2, P.49, L.4-25, P.50, L.1-5, P.57, L.24-25; P.58, L.1).On multiple occasions, David De Leon offered to allow counsel to review his cell phone. (Exhibit 2, P.49, L.5-10, P.50, L.25, P.51, L.1-6; P.53, L.21-25; P.54, L.1-3; P.58, L.4-10). Plaintiff's counsel even suggested that counsel violate this Court's order and review the phone. (Ex. 2, P. 55). De Leon testified that he was not capable of taking the email messages between himself and Richard Garza, the plaintiff's husband, and the text messages with the plaintiff, from his phone and producing them on some type of document. (Exhibit 2, P.53, L.21-25; P.54, L.1-5). Although David De Leon sought on multiple occasions to hand over his phone to counsel, counsel was prohibited from viewing the phone due to this Court's order. De Leon testified he is willing to turn his phone over for a <u>week</u>, if need be. (Exhibit 2, P.58, L.4-10).

De Leon testified that, while he was employed by defendant, he took photos of defendants' documents and sent those photos by text message to the plaintiff. (Exhibit 2, P.59-61). He claimed that he did this on his own accord and without any request from the plaintiff. *Id.* Defendants' counsel was unable to review David De Leon's cell phone to determine if text messages were exchanged between David De Leon and the plaintiff in which the plaintiff in fact did request such information.

As of the date of this motion, defendants have not seen any text messages between the plaintiff and De Leon other than the few messages produced by the plaintiff. Defendants have had no opportunity to review the approximately 75 messages

13

between the plaintiff and De Leon. On November 22, 2016, plaintiff filed second supplemental answers to Stellar's first interrogatories in which plaintiff has disclosed that, other than the few text messages she has produced, all remaining text messages with David De Leon are no longer available because she either changed phones three or four times and lost her text messages or were deleted because she set her phone to auto delete text messages. (Exhibit 10, plaintiff's second supplemental answers, number 4, P.5).

## STANDARD FOR DISCOVERY

Federal Rule of Civil Procedure 26 sets forth the scope of discovery. It states the following:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the party's relative access to relative information, the party's resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. (FRCP 26(b)(1)).

Rule 45 sets forth the procedure for serving a subpoena upon a third party for a deposition and for production of documents. Rule 45(d) requires that a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena. Regarding a subpoena's command to produce materials or permit inspection, Rule 45(d)(2)(B) provides that any person commanded to produce documents or to permit inspection may serve upon the party or attorney as needed in the subpoena a written objection. The objection must be served before the earlier of the time specified for compliance or

14

14 days after the subpoena is served. FRCP 45(d)(2)(B).

A party to a lawsuit only has standing to object to a subpoena duces tecum to a third party on the basis of some claim of privilege being asserted by that party. *EEOC v. Danka Industries, Inc., 990 F. Supp. 1138, 1141 (E.D. Mo. 1997)*; *Liberty Mutual Fire Insurance Company v. Centimark Corp., 2009 W.L. 1702291 (E.D. Mo. 2009)* (stating that only the third party upon whom a subpoena is served can move to quash the subpoena) and *Haar v. Callahan, 2009 W.L. 1408671 (D.S.D. 2009)*. The objections raised by the plaintiff do not assert any type of privilege on behalf of the plaintiff. As such, the plaintiff lacks standing to bring any such objections.

### Analysis

As the plaintiff lacks standing to bring any objections other than those based on privilege, and has not made any such objections, and as David De Leon has no objection to producing his cell phone for inspection and for copying, then the only inhibitor to the production of the phone is this Court's rulings which were made *sui generis*.

Unfortunately, counsel for defendants has been unable to find any cases directly addressing whether a party to a lawsuit can obtain, for copying, a cell phone of a third party who has no objection to producing it, but the Court has raised on its own accord concerns about such inspection and production.

In *Freres v. Zyngular Corporation, 2014 W.L. 1320273 (D. UT 2014)*, the defendant filed a motion to compel seeking production of the plaintiff's cell phone for copying and inspection. The Court looked to Rule 26 for guidance as to the scope of

15

discovery and to Rule 34 regarding production, inspection and copying. *Freres, 2014 W.L. 1320273 *1,2.* In that case, the plaintiff was a former independent distributor of the defendant who had brought suit against the defendant on allegations that the defendant had wrongfully terminated her distributorship. *Id. at 2.* The defendant claimed that the plaintiff had engaged in improper recruiting of defendant's other independent distributors to join another network marketing company. *Id.* The plaintiff objected on the grounds that her cell phone contained personal, confidential and privileged information but the Court overruled that objection. *Id. at 4.* The plaintiff also argued that she should not have to produce her cell phone for copying and inspection because it was her only point of contact in the case of an emergency. *Id. at 5.* To cure that problem, the Court required the defendant to obtain and pay for an alternative cell phone for the plaintiff to use while her cell phone was away for copying and inspection. *Id.* The plaintiff argued that having to produce her cell phone would constitute an undue burden or cost. The Court noted that while there may be some burden associated with producing a cell phone, the Court did not believe it was an undue burden. *Id.* The Court determined that the information on the cell phone was discoverable. *Id.*

In *Huang v. Gateway Hotel Holdings, 2008 W.L. 2486030 (E.D. Mo. 2008)* The defendant requested that the plaintiffs produce for inspection by a forensic consulting expert the plaintiffs' desktop computers, cell phones, email machines, laptops and mobile phones. *Huang, 2008 W.L. 2486030 at *1.* The plaintiffs objected, claiming an over broad intrusion of the plaintiffs' privacy rights. The Court held that the plaintiff did not have to produce the items for inspection at that time and that the defendants were

to determine which plaintiffs owned the desktop computers, cell phones, email machines, etc. *Id.* The names of the individual plaintiffs and what equipment they owned was to be produced to defendant within 20 days of the date of the order and upon receipt of that information, the defendant could re-file the discovery request. *Id.*

In *Bahkit v. Safety Marketing, Inc., 2014 W.L. 2916490 (D. CT. 2014)*, the plaintiff sought production of defendant's cell phones for copying and data retrieval. *Bakhit, 2014 W.L. 2916490 at *2.* The Court denied the request on the basis that the plaintiffs had failed to demonstrate that they were unable to obtain similar information through other discovery methods. *Id.*

In the case at bar, defendants have sought production of text messages from the plaintiff but plaintiff has only produced a limited amount of such text messages. In fact, plaintiff has admitted that she has lost or deleted other text messages with David De Leon. The plaintiff had a duty to preserve these text messages as they began after she had already filed suit and were directly relevant to the claims in her lawsuit. *Stevenson v. Union Pacific Railroad Co., 354 F.3d 739, 746 (8th Circuit 2004)*; *E Trade Securities, LLC v. Deutsche Bank AG, 230 F.R.D. 582, 588 (D.C. MN 2005)*. David De Leon attempted to obtain information from Verizon but the only information he was able to obtain does not date back to the date when he and the plaintiff first began text messaging and also does not contain the any actual text message contents. As such, defendants have no other available option to obtain the clearly relevant text messages between David De Leon and the plaintiff.

Additionally, De Leon has no objection to turning his phone over for copying,

17

even if it takes a whole week. He has a second phone, so he will not be without a means of contact. Although De Leon has been subpoenaed on two separate occasions and required to produce copies of his emails and text messages with the plaintiff and the plaintiff's husband, he has failed to do so. He did attempt to produce his phone on the second occasion, but this Court's order effectively prevented him from complying with the subpoena and, more importantly, denied defendants their right to view clearly discoverable information.

Defendants' subpoenas to De Leon clearly seek discoverable information. De Leon has testified that there were at least 75 text messages on the phone between himself and the plaintiff. Further, he has also testified that there are emails between himself and either the plaintiff or the plaintiff's husband on his phone as well. It appears that all of these text messages were created after the plaintiff filed this lawsuit, thereby imposing upon the plaintiff a duty to preserve such messages. However, she violated that duty and deleted her text messages or otherwise failed to take measures to preserve messages (even though she clearly knew how to preserve messages because she preserved those messages she believes are favorable to her case).

This Court, through its orders, have placed defendants in an extremely difficult and compromised situation. Should De Leon delete these text messages, it is unclear what remedy, if any, defendants would have. Furthermore, if text messages are deleted, they may not be retrievable. The data containing the deleted text messages is stored on most cell phones, but it is stored in a location where it is the first data to be overwritten when new data is created. Thus, if text messages are deleted and then additional new text messages are created or received, it is likely that the deleted text

18

messages are overwritten. Therefore, time is of the essence.

The above cases that have been cited by defendants demonstrate that courts have ordered the production of cell phones for copying when the information sought is discoverable and there is no other means to obtain it. Both of those requirements are met in this case.

While the cases cited to by defendants involve parties to an action, copying is justified in this case for several reasons. First, David De Leon does not object in any manner to having his cell phone copied, even after it was explained to him that copying would include all information on his phone. He indicated on multiple times that counsel could look through anything and he has nothing to hide (Ex. 2, P. 39, L. 4-11).

Copying is further justified in this case because David De Leon has demonstrated that he is not willing to be completely truthful in his testimony when placed under oath for a deposition. In his first deposition he claimed that no text messages between himself and the plaintiff were on the cell phone that he had with him, the 479 phone number. He pulled his cell phone out and looked at it and searched through his cell phone before testifying that there were no messages. During his second deposition, he admitted that his testimony was untruthful and incorrect. During his first deposition, he claimed that he had had no contact with the plaintiff about her lawsuit or her allegations prior to him being terminated in August of 2016. However, the few text messages that he did read into the record during his second deposition were from late June of 2016 and were regarding the plaintiff's lawsuit, thereby demonstrating that David De Leon had again not been truthful in his first deposition.

Initially, counsel had planned on using a simple software system to only

19

download text messages currently on De Leon's phone between the plaintiff, the plaintiff's husband, and the plaintiff's attorneys and De Leon. However, De Leon testified that he had text messaged with Erica Ortiz (another witness to plaintiff's allegations) but had deleted those messages. (Ex. 2, P. 70, L. 12). Further, he admitted that not all of his text messages had been saved. (Ex. 2, P. 70 L. 13-21). Morever, for evidentiary issues (such as the best evidence rule or, eventually, authentication), a full image of the phone conducted by a forensic analyst is most appropriate. Finally, as imaging the phone takes a complete copy of whatever is on the phone at that moment, then imaging will prevent the need for any additional examination of the phone as all data will already have bene retrieved. As such, it is necessary to conduct a full imaging of the cell phone in order to determine if there are deleted text messages that can be recovered and for the other reasons previously specified.

Counsel has spoken to a firm that conducts forensic examinations of cell phones. Based on these discussions, it is counsel's understanding that the actual imaging of the cell phone should be completed within one day. However, the forensic examiner is located in Jefferson City. It may be possible to have the examiner bring his equipment to Springfield to have the imaging done in Springfield so that the phone could be returned to De Leon promptly (as opposed to having to ship it to Jefferson City). De Leon has indicated he is willing to turn his phone over for a full week if necessary. Counsel believes that the entire process can be completed within one week, and likely less.

It is counsel's understanding that the actual imaging process is conducted on

20

camera, so all parties can determine if any improper actions were taken. The phone has to be isolated, as some phones have a function that allows for either a remote lock or a remote wipe of the phone by sending a command (like a text message) to the device. See, NIST Special Publication 800-101, Revision 1, Guidelines on Mobile Device Forensics, p. 28, excerpts of which are attached hereto as Ex. 11). Further, isolating prevents incoming data from overwriting existing data. *Id.* at p. 29.

Although De Leon testified in his deposition that he would not delete any text messages, there is no guarantee that he will not do so. Furthermore, there is always the possibility that he could drop his phone, spill water on it, or otherwise render it inactive in which case all such text messages could be lost. Clearly, time is of the essence. Defendants have taken multiple steps to attempt to preserve discoverable information (and likely admissible evidence) but have been thwarted by the plaintiff and by the Court. The Court's order prohibiting counsel from viewing the cell phone, coupled with De Leon's refusal or unwillingness to read text messages into the record, effectively prohibited defendants from obtaining this clearly relevant information. Arguably, these actions constitute a denial of defendants' right to a fair trial, especially when coupled with plaintiff's deliberate deletion of clearly relevant information and evidence.[1]

---

[1]In her recent deposition, given on December 13, 2016, plaintiff admitted that she deleted all text messages off of her work cell phone prior to turning in her cell phone to defendant Stellar Management Group III, Inc. She admitted that she knew how to preserve text messages and, in fact did preserve some text messages from her time of employment with defendant (in February of 2016) and other text messages between herself and De Leon which were from after her employment ended. She admitted that it was important to maintain relevant information and that text messages and emails relating to the case should not have been deleted. Despite this, she also testified that when she would receive a new phone, she would set her phone to automatically delete text messages after a certain period of time. She took no steps to preserve text messages between herself and employees or former employees of defendant, other than those text messages

## Conclusion

On two separate occasions, defendants have subpoenaed David De Leon to produce copies of text messages, emails, letters, and other correspondence and documents detailing communications between De Leon and the plaintiff, the plaintiff's husband or the plaintiff's attorneys. After De Leon failed to comply with the first subpoena, defendants requested that this Court enter an order of contempt or an order to show cause. This Court denied that order and instead required defendants to re-subpoena David De Leon to again produce the same documents. De Leon appeared and testified and acknowledged that there existed text messages and emails responsive to the subpoena. However, he did not produce any such text messages or emails. At one point, he stated he knew how to forward such text messages and emails. At another point, he indicated he was not sure if he knew how to place text messages and emails onto a document. De Leon did attempt, on multiple occasions, to provide his phone to counsel so that counsel could view the text messages on it, but this Court's order prohibited counsel from viewing such text messages. Counsel attempted to have De Leon read the text messages into the record, but De Leon was unwilling to do so.

De Leon has no objection to producing his phone for full and complete copying and prefers to do so. He is willing to produce it even for a full week if necessary. Although the plaintiff has attempted to assert an objection on behalf of David De Leon, plaintiff has no standing to do so and David De Leon has specifically stated that he has

she believed to be helpful to her case. She also deleted at least one Facebook message to a former employee, Erika Ortiz, who is a key witness in this case. She admitted she deleted this Facebook message as well as other text messages after she had received requests from defendants to produce all communications between herself and employees or former employees.

no objection. Case law clearly demonstrates that, when discoverable information is being sought and cannot be obtained through other means, courts are willing to order the production of a cell phone for imaging. Therefore, this Court should immediately enter an order allowing defendants to take whatever steps necessary to have David De Leon's cell phones imaged, including allowing defendants to subpoena De Leon to produce the cell phones and any provide any relevant passcodes, so that all relevant information and admissible evidence can be preserved.

TAYLOR, STAFFORD, CLITHERO, FITZGERALD & HARRIS, LLP

By _____
      Lance A. Roskens
      Missouri Bar No. 59408
      lroskens@taylorstafford.com
      3315 E. Ridgeview, Suite 1000
      Springfield, MO 65804
      Tel: 417-887-2020
      Fax: 417-887-8431
      **COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on the 15th day of December, 2016 the foregoing document was electronically filed via the court's electronic filing system and notice of this filing was thereby electronically sent to all counsel of record.

_____
Lance A. Roskens

23