SAMANTHA ZAMORA,          )
                                     )
          Plaintiff,      )
                                     )
          v.           )      Case No. 3:16-05028-CV-RK
                                     )
STELLAR MANAGEMENT GROUP,   )
INC., D/B/A QUALITY SERVICE      )
INTEGRITY; AND  STELLAR        )
MANAGEMENT GROUP III, INC., AND )
THE VINCIT COMPANY, LLC,     )
                                     )
          Defendants.    )

**ORDER (1) DENYING MOTION FOR SANCTIONS (DOC. 148), (2) AMENDING
ORDER (DOC. 257), (3) PERMITTING ACCESS TO DELEON'S SECOND PHONE,
AND (4) GRANTING MOTION TO RECONSIDER ORDER (DOC. 149)**

Before the Court is Defendants Stellar Management Group, Inc. d/b/a Quality Service
Integrity and Stellar Management Group III, Inc. ("QSI Defendants")'s Motion for Sanctions for
Failure to Preserve Electronically Stored Information.  (Doc. 148.)  Plaintiff filed opposing
suggestions (doc. 170), QSI Defendants filed reply suggestions (docs. 192), and a hearing on the
motion for sanctions was then held on April 7, 2017.  Also pending is QSI Defendants' Motion
to Reconsider Order Granting Plaintiff's Motion to Clarify (doc. 149), which has been fully
briefed (docs. 170,[2] 192).  For the reasons below, the Court now **DENIES** the motion for
sanctions, and orders additional discovery by **AMENDING** its Order (doc. 257) that precluded
access to Plaintiff's current work phone, permitting access to non-party witness David DeLeon's
second phone, and **GRANTING** the motion to reconsider (doc. 149).

I.      **Background**

Plaintiff brings this diversity action against QSI Defendants for wrongful retaliation and
discharge for reporting wrongdoing under *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d
81 (Mo. 2010) (en banc).  Plaintiff filed this action on March 9, 2016.  (Doc. 1)

QSI Defendants' request that Plaintiff produce for copying and inspection any cell phone
used by Plaintiff to contact any current or former employee and request that Plaintiff execute a

---

[2] Plaintiff's doc. 170 addresses both the motion for sanctions and motion to reconsider.

cell phone authorization, among other issues, were the subject of the fifth discovery dispute telephone conference in this case. Following the call, on January 6, 2017, the Court ordered (a) Plaintiff to produce her personal cell phones for copying to preserve a mirror image, but not to be disclosed until further order; (b) Plaintiff to request a call/text log from her cell phone provider, and identify any numbers she knows to belong to any current or former employee of QSI Defendants. (Doc. 113 at Part.I.3) Plaintiff then filed a motion to clarify and/or modify this order, stating among other things, that she primarily uses the phone for business work purposes, that the phone contains non-public information regarding her employer, and that she does not recall any communication on the phone that is related to this lawsuit. (Doc. 123.) The Court granted Plaintiff's motion and clarified that the January 6, 2017 Order did not extend to the work cell phone given to Plaintiff by her current employer ("Simmons phone"). (Doc. 125.)

QSI Defendants' motion to reconsider seeks the production of the Simmons phone to determine if she has used the phone to contact individuals for reasons related to this lawsuit other than business reasons based on Plaintiff's history of using work phone for personal use and the fact that all other personal phones have been lost or discarded. (Doc. 149.)

QSI Defendants allege in their Motion for Sanctions that Plaintiff deleted text messages and destroyed phones after filing suit. (Doc. 148 at 4.) QSI Defendants also contend Plaintiff was aware that QSI Defendants had requested her correspondence with their current or former employees of QSI Defendants yet she deliberately deleted a Facebook message Plaintiff sent to QSI Defendants' employee Erika Ortiz. (*Id.*) QSI Defendants maintain Plaintiff was aware of her obligation to preserve evidence because she took steps to preserve other evidence she believed was favorable to her case. (*Id.*) QSI Defendants are seeking dismissal, or a finding presuming that the lost information was unfavorable to Plaintiff, and a jury instruction directing for the presumption that the information was unfavorable to Plaintiff. (*Id.* at 19.)

In response, Plaintiff argues that neither did she intentionally destroy evidence nor has QSI Defendants been prejudiced to establish that sanctions are warranted. (Doc. 170 at 1-3.) Plaintiff concedes her failure to preserve a single Facebook message and all communications with non-party witnesses Joel Ortiz and David DeLeon, but argues she did not intend to destroy evidence. (*Id.* at 2.) Plaintiff maintains she has cooperated in obtaining phone records related to the messages and that any negative light cast on her by the messages is not indicative of a motive to destroy, but instead, it is consistent with her feelings as a result of QSI Defendants subjecting

her to mistreatment and retaliation. (*Id.* at 2.) Plaintiff asserts QSI Defendants have not been prejudiced because responsive correspondence identified by QSI Defendants is available to QSI Defendants from their current or former employees, namely, Joel Ortiz (current employee), David DeLeon (former employee), and Erika Ortiz (former employee). (*Id.* at 1-3.)

In reply, QSI Defendants states that Plaintiff does not dispute that she failed to properly preserve six or seven phones, including that she intentionally conducted a factory reset of her QSI work phone. QSI Defendants state Plaintiff also does not dispute she deleted the Facebook message. QSI Defendants point out that at the same time, Plaintiff preserved information she believed was favorable to her claim. (Doc. 192 at 1-2.) QSI Defendants contend it is unknown what other messages Plaintiff failed to preserve and she cannot be relied on to disclose all relevant communications unless those communications have already been discovered by QSI Defendants. (*Id.* at 2.)

## II.    Discussion

### A.    Sanctions Standard

Federal Rule of Civil Procedure 37(e) provides a federal court with authority to sanction a party for failing to preserve electronically stored information. Rule 37(e), in its entirety, provides as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>> (A) presume that the lost information was unfavorable to the party;
>>>
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>> (C) dismiss the action or enter a default judgment.

QSI Defendants, as the party seeking the sanction, bear the burden of showing the requisite intent and prejudice. *See Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 811 (8th Cir. 2005) (internal quotation marks omitted). Whether a court imposes discovery sanctions

is a discretionary decision, and the scope of that discretion narrows as the severity of the sanction increases. *Bergstrom v. Frascone*, 744 F.3d 571, 576 (8th Cir. 2014).

The Eighth Circuit has elaborated that a district court must make the following two findings before an adverse inference instruction for spoliation is warranted: "(1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party." *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 463 (8th Cir. 2016). "Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir. 2004)).

The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation. *E\*Trade Secs. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005) (imposing sanctions where company failed to issue litigation hold on emails in reliance on its backup tapes, which it then destroyed pursuant to retention policy). An explicit finding of bad faith is not required to impose sanctions on a party that destroys specifically-requested evidence after litigation has commenced. *Gallagher v. Magner*, 619 F.3d 823, 845 (8th Cir. 2010) (citation omitted).

### B. Application of Standard

The sources of evidence at issue here that were not preserved include (1) a Facebook message, (2) the work cell phone issued to Plaintiff by QSI Defendants ("QSI phone"), and (3) five or six personal phones utilized by Plaintiff during the relevant time frame.

First, it is also not disputed that while discovery was occurring in this case, Plaintiff deleted a Facebook message she sent to QSI Defendants former employee, Erika Ortiz. (Doc. 148-5, Plt's Dep. at p. 184.)

Second, after Plaintiff's employment ended, she deleted everything on her QSI phone by conducting a factory reset before returning the phone to QSI. (Doc. 148-5, Plt's Dep. at p. 158, 177.) Plaintiff also testified that she had her QSI phone set to auto delete text messages, another reason why information was deleted from her QSI phone. (*Id.* at p. 159-60.) By contrast, it is undisputed that before her last day with QSI Defendants and before turning in her QSI phone, Plaintiff took photos of certain QSI documents and of text messages between herself and Erika

Ortiz to preserve the information. (*See* Doc. 148-5, Plt's Dep. at p. 163-64, 169, 181-83; doc. 148-6 (Ex. 30 in Plaintiff's deposition).) As a result, the only information from Plaintiff's QSI phone produced in discovery is this information that Plaintiff specifically preserved.

Third, Plaintiff submitted a declaration (doc. 123 at 4-6) and status reports (docs. 124, 127) with the Court that explain the background of her personal cell phone use in 2016 as follows: (1) she was unable to locate the "713 phone" (for which multiple handsets have been assigned) despite testifying during her December deposition that she believed she had it; (2) the "8899 phone" that she has used at times belonging to her husband was produced to a third-party vendor for imaging but the phone only has a couple of weeks of stored data because her husband had discarded the previous SIM card sometime around new year's eve after it stopped working; and (3) Plaintiff understands the "2556" phone that she has used at times belonging to her husband was discarded by her husband after it stopped working.

The Court is unwilling at this point to base a finding of prejudice on speculation about the content of material that is not in the record, when at least some of that absent material is available through other discovery. In particular, prior to the pending Motion for Sanctions, the Court denied QSI Defendants' access to Plaintiff's current work cell phone (doc. 125) and allowed limited access by search terms to non-party witness David DeLeon's personal cell phone (doc. 257). The Court finds sufficient justification in the current record to allow QSI Defendants access to this additional discovery.

Because a finding of prejudice is premature, the Court need not determine the issue of intent—whether the conduct was the result of bad intent or accidental oversight. While the Court is somewhat sympathetic to a lay witness in contrast to a corporation subject to a formal litigation hold, the Court observes that the record might permit a reasonable inference that Plaintiff was aware of the importance of preserving evidence when she reset her company phone belonging to QSI Defendants and deleted the Facebook message. It is clear that Plaintiff's memory cannot be relied upon with respect to her communications with former or current QSI Defendants' employees. Moreover, under the circumstances, Plaintiff's continued use of the auto-delete feature on all of her phones despite the discovery rulings for the production of information contained on phones shows a low regard for the necessity of preserving evidence in this case.

## III. Conclusion

Based on the briefs, argument, live witness testimony, and exhibits introduced at the hearing, the Court finds that while Plaintiff cannot be relied on to disclose all relevant communications, QSI Defendants' request for dismissal, or a finding presuming that the lost information was unfavorable to Plaintiff, and a jury instruction directing for the presumption that the information was unfavorable to Plaintiff are premature. However, at this juncture, the Court finds additional discovery is warranted. Accordingly, the Court orders as follows:

1. QSI Defendants' motion for sanctions for failure to preserve electronically-stored information (doc. 148) is **DENIED**.

2. The Court **AMENDS** its March 28, 2017 Order (doc. 257) and **GRANTS** in full QSI Defendants' Motion to Access David DeLeon's Phone (doc. 240) in which QSI Defendants seek full and unrestricted access to the mirror image copy of DeLeon's cell phone. The mirror image copy of DeLeon's cell phone, previously provided to the Court *in camera* pursuant to the Court's January 6, 2017 Order (doc. 113), will be made accessible to QSI Defendants at the Court's Southern Division Courthouse as of Thursday, April 13, 2017 (The Clerk's Office is open from 9:00 a.m. to 4:30 p.m.).

3. QSI Defendants may subpoena DeLeon to produce his second cell phone, and any passcode information necessary for access to the phone, to the third-party vendor previously utilized by QSI Defendants in this case for mirror imaging. Costs of production of DeLeon's second phone will be borne by QSI Defendants.

4. QSI Defendants' Motion to Reconsider Order Granting Plaintiff's Motion to Clarify (doc. 149) seeking the production of the Simmons phone is **GRANTED**.

   a. Plaintiff is directed to produce a text/call log identifying activity on the Simmons phone.

   b. Pursuant to the following protocol, the Court will order Plaintiff to produce her Simmons phone:

      i. Plaintiff, at her cost, will produce for copying and inspection her Simmons phone to a third-party vendor for the purpose of obtaining a mirror image.

      ii. The Court will appoint a special master to review the mirror image and identify any relevant communications, including but not limited to, texts and emails.

iii.     On or before Wednesday, April 19, 2017, Plaintiff and QSI Defendants are to notify the Court of an agreed to special master and third-party vendor or alternatively, Plaintiff and QSI Defendants can each submit a list of two proposed special masters and two third-party vendors for the Court's consideration.

iv.     After the special master has identified relevant communication, those communications will be provided to Plaintiff's employer (Simmons) for the purpose of conducting a review for any protected business information and to Plaintiff for the purpose of conducting a review for any attorney-client communications. Within one week of the communications being provided to Simmons and Plaintiff, both are to notify the special master of any objections to the production of communications on these grounds. Thereafter, the special master will provide the Court with a report recommending his or her rulings on any objections lodged by Simmons and/or Plaintiff and the Court will determine the information to be produced to QSI Defendants.

v.     Fifty percent of the cost of the special master is to be borne by Plaintiff and fifty percent of the cost is to be borne by QSI Defendants.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: April 11, 2017